Cockey *vs.* Forrest.—1831.

" The putting of a letter into the post office, giving the notice, is sufficient, without proof of its having been actually received, and if the party to be affected with the notice, reside in a different place from the holder, the notice may be sent through the post office, to the post office nearest the party entitled to such notice;" 1 *Wheat.* 298. *Bank of Columbia vs. Magruder,* 6 *Harr. and Johns.* 181. According to the admission of the parties, it appears, that the mail left *Washington* city early in the morning, and arrived in *Baltimore,* at an early hour the same afternoon. In legal presumption, the notice must have reached *Payson &amp; Co.* on the 7th February, who were legally bound to deliver notice to *Green* on the following day. This not having been done, we are of opinion, that the court below were right, in the opinion expressed by them in the second exception, and affirm their judgment.

JUDGMENT AFFIRMED.

---

.Joshua Cockey *vs.* Jonathan Forrest.—*December,* 1831.

Z being insolvent, and desirous to raise money, applied to F, and obtained his promissory note for $250, payable 60 days after date to Z, for the purpose of selling it to raise money. No consideration was paid for the note. Z endorsed the note in blank, sold and delivered it to the plaintiff, who was ignorant of its being an lent note, for the sum of $200. The maker of the note was in good circumstances. HELD, that this note was usurious and. void.

Appeal from *Frederick* County Court.

*Assumpsit* by the appllant, the endorsee, against the appellee, the maker of a promissory note.

At the trial the plaintiff offered in evidence the following promissory note, the hand writing of the drawer and endorser being admitted; viz:

"$250. *Westminster*, February 26th, 1827. Sixty days after date, I promise to pay to the order of *Wm. Zollickoffer*, two hundred and fifty dollars, for value received. *Jonathan Forrest.* Endorsed,—Pay the contents to *Joshua Cockey. Wm. Zollickoffer.*" And then read in evidence by agreement, the following statement of facts. It is admitted that the note upon which this suit is brought, was executed by the defendant, whose name is signed thereto. That *Wm. Zollickoffer* wished to raise money, and not being able to do so upon his own note, he being insolvent, applied to the defendant, and obtained the note in question, for the purpose of selling to get money. That the note was executed for the purpose of selling, and without any consideration. That *Zollickoffer* sold the same to *Cockey*, the plaintiff, for two hundred dollars, and endorsed and delivered it to him in blank. The words "pay the contents to *Joshua Cockey*," were put there by the plaintiff's counsel before the suit was brought. It was also admitted that the defendant, at the time said note was executed, and endorsed to the plaintiff, was, and now is, in good circumstances as to property, and abundantly able to pay the amount therein expressed; and that *Zollickoffer* was, and still is insolvent. That the plaintiff had no notice, or knowledge, that said note was an accommodation note, given to raise money. Upon this statement, the defendant prayed the court to instruct the jury, that the plaintiff was not entitled to recover upon the ground, (according to an amendment of the record made by consent, upon the argument of the cause in the Court of Appeals,) that said note was avoided by the statute against *usury*. The County Court gave the instruction as prayed. The plaintiff excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before STEPHEN, ARCHER, and DORSEY, J.

*Ross,* for the appellant, contended,

That an accommodation note is a legal instrument, and is not void in its inception for the want of consideration. It is an accommodation note only as between the original parties; to all others, it is a business note, *unless they had notice of its origin:* it is a binding security against the drawer, as to all persons not privy to the original transaction. The drawer, by delivering it to the payee, puts it into circulation as his valid note: it would be a gross fraud on the public, to permit him to say otherwise. Nothing (*as it respects third parties,*) can discharge him from its obligation, but payment, or release; neither want of consideration, nor fraud, can be alleged against the holder. 5 *Rand.* 425. 1 *Serg. and Low.* 74. As long as the drawer held the note in his hands, it was an inchoate and imperfect note. It takes effect from delivery. When the drawer delivers it to the payee, that gives it a legal existence. It was the delivery, then, of this note to *Wm. Zollickoffer,* that made it the note of *Jonathan Forrest:* that was its inception; and no usury having taken place at that time, it was not void in its commencement. 8 *Cow.* 706. The character the note received at its birth, it retains through life; what it was then, it is now; if it were free from the taint of usury in its origin, no subsequent contract can affect it. 1 *Peters' S. C. Rep.* 43. It was not contended below, nor could it be, that there was any design, between the drawer and the payee, to evade the statute of usury; nor that the transaction was a loan of money in any form. It was not obnoxious to the charge of usury, as it respects the transaction between *Forrest* and *Zollickoffer:* between them it was an *abstract* accommodation note. The question now arises, was it usurious, as it relates to the transaction between *Zollickoffer* and *Cockey.* If the note upon its delivery by *Forrest* to *Z.* was a valid contract, and not usurious, then no subsequent contract can taint it with usury. The court below thought that it was brought into legal existence by the transaction between *Zollickoffer* and *Cockey,* and

that the payment of the $200, must be regarded as a loan, and not as a purchase of the note. That the payment of the $200 was a loan, is an inference the court drew from the position they assumed, that the note had no legal existence as a contract, until the transaction between *Z.* and *C.* made it such, and rested this opinion upon the authority of *Sauerwine vs. Brunner*, 1 *Harr. and Gill*, 477, which they considered as a parallel case, and conclusive upon the subject. With great deference to the court, the appellant's counsel thinks the case of *Sauerwine and Brunner* differs in its circumstances essentially from the case at bar. In that case, *Brunner's* note was drawn in blank, without the name of the payee inserted in it, and offered in this situation to *Brown*, who inserted therein his own name, as payee. Application was made to *Brown*, by *E.* for a loan of money; and *Brown* did loan the money to *E.* on the note; it was first negotiated for the purpose of raising money, at usurious interest; none of these facts, which are all important, exist in the case at bar. The note had all the characteristics of a consummate note; no blanks to fill; no application made by *Z.* to *C.* for a loan; no money paid by *C.* to *Z.* as a loan. The application made by *Z.* to *C.*, was *to sell the note*, and the payment made by *C.* to *Z.*, was the consideration of the *purchase of the note*, and these facts admitted in the case stated, and upon a case stated, as upon a special verdict, the court is to declare the law on the facts stated, and are not at liberty to infer facts. 2 *Harr. and Gill*, 114, 320. But the leading distinction between the case of *Sauerwine and Brunner*, and the case at bar, rests upon the knowledge of the parties as to the origin of the note. *Brown*, when the note was offered to him in blank, and when he inserted his own name therein, as payee, knew it was not a business note; he knew *Brunner* did not owe him the money, and when *Eichelberger* made application to him for a loan, he must have known it was a note drawn by *Brunner* for the accommodation of *Eichelberger*, and that when he discounted it, and not before, it was

brought into legal existence. He knew he was not buying a subsisting security sent into market for sale, for he could not buy that, what had no legal existence. In the case at bar, it is admitted, that *Cockey* had no notice or know-ledge of the transaction between the original parties. The note is offered to him by *Z.*, the payee, as his proper-ty, to whom, as a business note, it properly belonged, and he takes it upon the credit of the names upon it, and gives credit to the representation that the drawer himself gives to the note, through the medium of his signature. If this be not a valid note, it is a gross fraud, practised upon *Cockey* by *Forrest* and *Zollickoffer*, and justice will not per-mit *Forrest* to defeat his own note, and to injure a person who advanced money upon the faith of the representation of the contract, as made by *Forrest*, through the medium of his signature. To sustain the opinion of the court below, that the note of *Forrest* was not an operative note, and not brought into legal existence until it was delivered by *Zol-lickoffer* to *Cockey*, can only be supported by the assump-tion of a fact negatived by the case stated, to wit, "the knowledge of *Cockey*, as to the origin and history of the original transaction." The case of *Sauerwine vs. Brunner*, and the *New York* cases cited in support of that decision, are all founded upon the fact, "that the lender of the money knew the purpose for which the paper was created;" and in *Sauerwine vs. Brunner*, and the *New York* cases, such knowledge appeared as part of the case. In most of those cases, the note was offered by the drawer, or his agent, for discount, which constructively informed the person to whom it was offered, that it was an inchoate and imperfect note; it was the note of the drawer himself, until deliv-ered. It is a familiar principle of law, applied to deeds, and other instruments, that they take effect from delivery. It was not the drawer's note, until he delivered it to the lend-der of the money; that was its inception: but in the case at bar, *Forrest*, the drawer, did not offer the note for sale, or discount; it was not in his possession, nor under his con-

trol.   He delivered it, as his act and deed, to *Z.*, and by his delivery of it to *Z.*, he imparted to it all the essentials of a valid and perfect contract, to wit, signing and delivery. The want of consideration, he may offer as evidence against *Z. ;* this admits the note valid as to its execution, and is offered only in avoidance.   It admits the legal existence of the note; and if the legal existence of the note is established, *F.* cannot avoid it as to strangers, upon the ground of want of consideration.   *Sauerwine vs. Brunner*, and *Bennett vs. Smith*, 15 *Johns.* 355, are the only cases where, as the case at bar, the payee held and offered the note for discount or sale; and in the first case, *Brown*, to whom it was offered, must, from the facts in the cause, have known the purpose for which the paper was created ; in the latter case, it was given in evidence, that the drawer gave the notes to the payee, for the purpose of being discounted, at an usurious interest, thus shewing it had its origin in usury.   In those cases, the court decided the parties had notice of the origin of the transaction; in the case at bar, it is admitted he had no such knowledge; that knowledge is always of the essence of usury, and that the courts of *New York* decided upon this principle, in 4 *Cowen*, 279, they say,—"admitting that this principle may be applicable to specialties, as well as to negotiable paper, it must be with the qualification, that the person purchasing knew that the specialty was not operative, being made for the purpose of raising money."   And in 8 *Cowen*, 689, *Powell vs. Waters*, it is said, *Parish* had *prima facie* evidence that the note was for discount, and not a business note.   The application to *Parish*, was to discount for the drawer; if he had inquired into the origin of the paper, he might have discovered the fact, that the note had never been discounted ; it was an inchoate and imperfect note, until it was delivered by the drawer ; it was the drawer's note when offered to *Parish.*

The courts of *Virginia*, in *Gilmor*, 42, and 5 *Rand.* 333, have decided, "that a note made for the accommodation of

the payee, may be sold at a greater premium than legal interest; and if the purchaser had no knowledge that it was an accommodation note, it is not usurious. A man may take a bill of exchange, or note, to market, and sell it (if there be no shift, or device, to cover a discount,) for any price which he can obtain for it; and though the price which he obtains, bears no proportion to its value, the purchaser nevertheless would not be guilty of usury. It might be otherwise if the seller indorsed the bill, and remained liable to be sued upon it; it would then be for the consideration of a jury, whether the bargain and sale was not a shift for a loan; for it cannot be too often repeated, that to constitute usury, there must either be a direct loan, and a taking of more than legal interest, for the forbearance of payment, or there must be some device for the purpose of concealing or evading the appearance of a loan, and forbearance, when, in truth, the transaction was a loan. 3 *Serg. and Low.* 93, *note* 13. 4 *East's Rep.* 57. In the case at bar, the case stated, is, as it were, the special verdict of the jury, and they say the bargain and sale was not a loan, but that Z. sold the note to *Cockey,* and *Cockey* admitting it was a purchase by him of the note, without resort, and not a contract of indorsement, precludes the idea that Z. remained liable to him on his blank indorsement. And in *Wiffen vs. Roberts,* 1 *East's Rep.* 261, in an action by the indorser, against the drawer of a bill of exchange, accepted by one *Yates,* the defence set up was, that the bill was an accommodation one, and that the defendant had not paid the full value for it. *Lord Kenyon* said, that when the bill is drawn in the regular course of business, the indorsee shall recover the full amount of the bill; but when it is an accommodation note, and that known to the indorsee, and he pays but part of the amount, in such case he can duly recover the sum actually paid; and this case of *Wiffen vs. Roberts,* is recognised in 7 *Johns.* 361, 13 *Johns.* 52, 15 *Johns.* 56; and the same principle is adopted in a late case of *Davison vs. Franklin,* 20 *Serg. and Low.* 363, where the chief jus-

tice says,—I will not make the rule absolute, to set aside a judgment given to secure a gaming debt. "If we made this rule absolute, we should enable the defendant to defeat the judgment by his own fraud and misconduct, and to injure a person who advanced money. upon the faith that his representation was true." I think we shall best ensure the end of justice, by directing the judgment to stand for the sum actually paid, if, upon inquiry, any was paid. And *Ashhurst*, J. in 2 *Term*, 72, lays it down as a broad, general principle, that "whenever one of two innocent persons, must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it." *Forrest*, by giving *Z.* his unqualified note, enabled him to offer, and to sell it to *C.* as a valid note; he has, by this act of fraud or misconduct, enabled *Z.* to deceive and to injure *C.* ; and if a loss must be sustained, *F.* must sustain it : as to the extent, whether to the full amount of the note, as the sum actually paid, the court, by their decision, have rendered it unnecessary to discuss. If chief justice *Gibbs*, in the case of *Jones vs. Davison*, 3 *Serg. and Low.* 93, could never understand the equity of the rule, "that an innocent indorsee shall be prevented from recovering upon a bill of exchange, which has been contaminated in its creation with usury, by means to which he is not privy, and of which, when he receives the bill, he can know nothing;" the court of *Frederick* county, by their decision in the case at bar, have fixed and settled a rule of more difficult solution. They have said, that an innocent purchaser of a note, not contaminated in its creation with usury, shall not only be prevented from recovering upon a note thus purchased, but he shall be a usurer, and suffer the penalties of the statute of usury. It is the adoption of a rule, that changes the character of moral action, and stamps innocence with crime. The court below, by their decision, have sustained the defence of the defendant, and by their judicial act, have pronounced the note upon which this action was brought, usurious, and that *Joshua Cockey* must not only lose his money, but be ob-

noxious to the penalties of the law. Should the Court of Appeals affirm the judgment of the court below, they will judicially declare, that an accommodation note, if purchased by an innocent purchaser, from the payee, without notice of its origin, for a sum less than the sum appearing on its face, the purchaser shall not only suffer the pecuniary loss of the sum he paid first, but he shall suffer also the penalties of the statute of usury.

*Palmer*, for the appellee.

The question is, was the note negotiated upon a usurious consideration. The rule is, that all contracts which are substantially usurious, are void, no matter what means or terms are employed to avoid the statute.

It is admitted, that a *bona fide* purchaser of a note, or bond, will be protected, though he gives less than the amount it expresses; but it must be an actual purchase, and its payment must not be guarantied by the seller. If it is so guarantied, or the note indorsed by the borrower, it is no sale, but a loan of money. This is stronger than the case of *Sauerwine vs. Brunner*, 1 *Harr. and Gill*, 477, because in that case, the note was in the hands of a *bona fide* holder, whilst here it is in the hands of the usurer. He referred also, to 7 *Johns.* 26. 1 *Mass. Rep.* 217. 1 *Wm. Blk.* 445.

The court considering this case decided by *Sauerwine vs. Brunner*, 1 *Harr. and Gill*, 477,

**AFFIRMED THE JUDGMENT.**